# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 1, 2026

Lyle W. Cayce
Clerk

No. 25-10774

Alta Power, L.L.C.,

*Plaintiff—Appellant*,

*versus*

General Electric International, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:21-CV-3183, 3:23-CV-270

Before Clement, Southwick, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Alta Power, L.L.C. appeals the dismissal of its tort claims against General Electric International, Inc. based on a contractual consequential-damages waiver. GE is a non-party to the agreement in which Alta bargained for a mutual waiver of consequential damages "arising out of or connected in any way to" the agreement. Alta asserts that (a) GE is not an intended third-party beneficiary eligible to enforce the consequential-damages waiver, (b) the waiver is unenforceable because GE fraudulently induced Alta to enter the agreement, and (c) the waiver does not apply to intentional tort claims.

No. 25-10774

The district court rejected Alta's arguments under Texas law and granted summary judgment to GE.  We AFFIRM.

I.

Looking to supply electricity in Texas during times of peak demand, Alta sought to build "peaker plants."  Peaker plants run only when demand for electricity exceeds the normal base load, like during a winter storm or extreme heat wave.  To build its peaker plants, Alta sought to purchase refurbished turbines—a cost-effective alternative to new turbines.  In the late 2010s, two companies, ProEnergy Solutions and GE, positioned themselves as refurbished-turbine suppliers.

GE joined forces with WattStock to develop its TRUEPackage program and bring refurbished turbines to market.  In 2017, GE and WattStock entered a Memorandum of Understanding ("MOU") to memorialize their collaboration.  Through TRUEPackage, WattStock could purchase, refurbish, and sell turbines manufactured by GE and backed by warranties GE chose to offer.  While courting Alta's business, GE and WattStock allegedly represented that they would supply up to nine turbines for no more than $10 million apiece and that GE would "stand behind" WattStock's work to guarantee the turbines' quality.

Alta chose to contract with WattStock over ProEnergy, entering a Master Agreement in February 2019.  Just one provision in this agreement generated the instant appeal.  Alta and WattStock agreed to a limitation-of-liability provision mutually waiving consequential damages (the "Waiver").  It reads:

> Notwithstanding any other provision of this Agreement, and to the fullest extent permitted by law, neither Party, their respective officers, directors, partners, employees, representatives, contractors[,] or subcontractors shall be liable

2

to the other or shall make any claim for any incidental, indirect[,] or consequential damages arising out of or connected in any way to this Agreement. This mutual waiver of consequential damages shall include, but is not limited to, loss of use, loss of profit, loss of business, loss of income, loss of reputation[,] or any other consequential damages that either Party may have incurred from any cause of action including negligence, strict liability, breach of contract[,] and breach of strict or implied warrant[y].

Consistent with the earlier MOU, GE officially became a WattStock subcontractor in July 2019. Although the details are unimportant to this appeal, the turbine arrangement broke down in 2020. WattStock sued Alta in state court for breach of contract, Alta countersued WattStock under contract and tort theories, and Alta eventually implicated GE as a third-party defendant. WattStock then filed for bankruptcy and removed the case to federal court. GE next asserted a counterclaim against Alta. Eventually, Alta and WattStock settled their claims against each other. The district court granted GE summary judgment on all of Alta's claims pursuant to the consequential-damages waiver, but it held that GE could not state a breach of contract claim. It accordingly dismissed all claims with prejudice. Alta concedes that, if successful on appeal, consequential damages are the only damages it seeks. We review a district court's summary judgment ruling de novo. *Favela v. Collier*, 91 F.4th 1210, 1212 (5th Cir. 2024).

## II.

Alta challenges the district court's summary judgment conclusion on three fronts. First, Alta argues that GE is not an intended-third-party beneficiary to the Waiver because it was not WattStock's subcontractor at the time of the alleged wrongdoing. As such, GE's allegedly tortious conduct occurred outside its role as subcontractor and is not covered. Next, Alta avers GE's alleged fraudulent inducement renders the Waiver

unenforceable, such that summary judgment should have been denied. Failing those two arguments, Alta lastly asserts that the Waiver does not apply to intentional tort claims. Under Texas contract law, we reject each of Alta's arguments.

## A.

Start with Alta's third-party-beneficiary argument. "A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (per curiam). The parties must "clearly and fully spell[] out" their intent to confer a direct benefit on a third party. *Id.* (citation modified); *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 583 (Tex. 2023) ("The controlling factor is whether sufficiently clear and unequivocal language demonstrates such intent."). Contracting parties need not "expressly name an intended third-party beneficiary." *Wal-Mart Stores*, 663 S.W.3d at 585–86 (citation modified). Instead, they may reflect an intention to benefit a "class or category of persons," who "may not be known to the contracting parties at the time of execution." *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App.— Houston [1st Dist.] Mar. 29, 2012, no pet.). And third parties must benefit more than "incidentally" to enforce a contract. *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011). GE must shoulder a "heavy" burden to establish its intended-third-party-beneficiary status. *Mo. Pac. R.R. v. Harbison-Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994) (applying Texas law).

Recall that the Waiver applies to Alta, WattStock, and, as relevant here, the parties' "subcontractors." It is undisputed that GE became a WattStock subcontractor in July 2019, so GE is within the "class or

category" covered by the Waiver. *ConocoPhillips*, 2012 WL 1059084, at *6. The Waiver is broad, limiting subcontractors' consequential-damage liability for "any cause of action" "arising out of or connected in any way to" the Master Agreement. That benefit is more than merely incidental. *See Williams*, 353 S.W.3d at 145–46 (concluding salary and overtime benefits promised to third party firefighters in union contract were direct, not merely incidental benefits). Alta and WattStock intended to directly benefit subcontractors, including GE, when entering the Waiver. *See S. Tex. Water Auth.*, 223 S.W.3d at 306.

In refuting that conclusion, Alta reads an additional limitation into the Waiver—an implied capacity restriction. In Alta's view, the contracting parties could not have intended to benefit GE because it gained official subcontractor status after the contract was entered and *after* the allegedly tortious conduct occurred. Alta asserts that the waiver only covers "subcontractors" acting as subcontractors. GE responds that Alta's additional limit is not rooted in the agreement's text. The Waiver's only contractual limitation is content-based—disputes must be connected in some way to the Master Agreement—which does not alter GE's status as an intended third-party beneficiary.

Alta's implied capacity restriction is a non-starter. "[E]very contract should be interpreted as a whole and in accordance with the plain meaning of its terms." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). "Subcontractors" must therefore carry its "plain, ordinary, and generally accepted meaning." *See Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 339 (Tex. 2023). Context helps illuminate that meaning. *Id.*

Put simply, a "subcontractor" is one who "enters into an agreement with a contractor, rather than the principal party." *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 778 (5th Cir. 2006). Alta

relies on this definition to suggest that subcontractors exist only in relation to "the work performed" under an already-existing agreement. And, because the Master Agreement did not exist at the time GE allegedly wronged Alta, GE is not entitled to enforce the agreement as an intended third-party beneficiary. Alta cites *Finley* to suggest the Waiver's grammatical context supports this interpretation.

*Finley* does not fit. In *Finley*, the disputed word, "predecessor," had a range of possible applications underscoring the contextual analysis. 672 S.W.3d at 342–43 (addressing whether release provision applied to corporate predecessors or predecessors in interest to the land at issue). The grammatical structure of the provision revealed that "predecessor" related back to the released entities (the "*who*"), not the land itself (the "*what*"). *Id.* at 343. So, the court concluded that the release applied only to corporate predecessors (related to the *who*), not predecessors in interest to the property (related to the *what*). *Id.* at 344–45. By contrast, Alta does not suggest "subcontractors" is defined differently than GE suggests—there is not a "range of potential applications" to discern. *Id.* at 342. Alta instead seeks a limitation on when "subcontractor" status must attach. And even applying *Finley*'s logic about grammatical structure lending meaning, Alta's proposed restriction on "subcontractors" is not rooted in the Waiver's grammatical structure. The "syntactic use" of "subcontractors" reflects a connection only to the parties, *id.* at 343, not to the "work performed under the Agreement." The Waiver's scope limitation—to actions "arising out of or connected in any way to" the agreement—appears later and does not alter the meaning of "subcontractor."

Subcontractors enter agreements with a contractor. It is undisputed that GE entered an agreement with WattStock. Alta did not bargain for a capacity or timing restriction. It bargained only for a scope limitation, one that Alta's claims against GE fall well within—they are "connected" to the

No. 25-10774

Master Agreement.[1]   Courts must not "rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *In re Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 124 (Tex. 2018) (quoting *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996)); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012) ("Nothing is to be added to what the text states or reasonably implies." (citation modified)).  The Waiver's broad text reflects the parties' intent to directly benefit subcontractors when their conduct is connected *in any way* to the Master Agreement.  The plain text is "sufficiently clear and unequivocal." *Wal-Mart Stores*, 663 S.W.3d at 583.  GE is an intended-third-party beneficiary to the Master Agreement's consequential-damages waiver, eligible to enforce it against Alta.

## B.

Alta next argues the Waiver is unenforceable in the face of GE's alleged fraudulent inducement.  The district court rejected this argument, concluding that the "Texas Supreme Court [in *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213 (Tex. 2019)] has made clear that waiving the fraud flag does not constitute a compelling reason" to invalidate a limitation-of-liability provision.  Alta argues that the district court "overread *Bombardier*'s limited holding, overlooked the interest-balancing in *Bombardier*'s careful analysis, and too quickly overrode the rule

---

[1] Alta's parade of horribles—that this interpretation absolves "*any* non-party's *pre-Agreement* conduct so long as that non-party *later* became one of WattStock's 'officers, directors, partners, employees, representatives, contractors[,] or subcontractors'"—is misplaced.  The scope provision significantly limits an otherwise exceedingly broad mutual waiver of consequential-damage liability.  More specific drafting could have provided further limits.

that fraud vitiates all it touches." *Bombardier* forecloses Alta's fraud-vitiates-all argument.

Generally, contracts are "subject to avoidance on the ground of fraudulent inducement." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011). But the Texas Supreme Court has recognized exceptions to this rule, concerning both disclaimer-of-reliance and limitation-of-liability clauses. In a series of cases, the Texas Supreme Court explained that "when sophisticated parties represented by counsel disclaim reliance on representations about a specific matter in dispute," the disclaimer may "conclusively negat[e] the element of reliance in a suit for fraudulent inducement." *Id.* at 332 (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997)); *see also Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 58 (Tex. 2008).

Competing aims underscore this disclaimer-of-reliance exception: (1) "a clear desire to protect parties from unintentionally waiving a claim for fraud"; and (2) "the ability of parties to fully and finally resolve disputes between them." *Italian Cowboy*, 341 S.W.3d at 332 (quoting *Schlumberger*, 959 S.W.2d at 179). In reconciling those aims, the Texas Supreme Court has adopted a narrow, context-dependent rule—it "decline[d] to adopt a *per se* rule that a disclaimer automatically precludes a fraudulent-inducement claim." *Forest Oil*, 268 S.W.3d at 61. "[T]o disclaim reliance, parties must use clear and unequivocal language." *Italian Cowboy*, 341 S.W.3d at 336. That's because the Texas Supreme Court is wary of forgiving "intentional lies regardless of context." *Id.* at 335 (quoting *Forest Oil*, 268 S.W.3d at 61).

Against this backdrop, enter *Bombardier*. There, the Texas Supreme Court extended the *Schlumberger* line of cases to limitation-of-liability clauses. The plaintiffs argued that a punitive-damages waiver procured through fraud was unenforceable. *Bombardier*, 572 S.W.3d at 230. The

Texas Supreme Court rejected the plaintiffs' argument. It recognized the "strongly embedded public policy favoring freedom of contract." *Id.* "[A]bsent a compelling reason, courts must respect and enforce the terms of a contract that the parties have freely and voluntarily made." *Id.* "Limitation-of-liability clauses . . . are generally valid and enforceable." *Id.* at 231. To be sure, though, violations of law or public policy can be compelling reasons to render such a provision unenforceable. *Id.* at 230. And the Texas Supreme Court has honored the general maxim that "fraud vitiates whatever it touches." *Id.* at 232 (quoting *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015)). Reconciling these conflicting principles, the *Bombardier* court emphasized that it has "never held" that "fraud vitiates a limitation-of-liability clause." *Id.*

GE would stop there: "claiming fraud isn't enough to get through the waiver." But as Alta argues, the *Bombardier* court took a more nuanced tack. The Texas Supreme Court reiterated that "fraudulent inducement is not always a ground to set aside a contract," and that "certain circumstances" affect whether that is so. *Id.* (citing *Italian Cowboy*, 341 S.W.3d at 332). Just like in *Italian Cowboy*, the *Bombardier* court "balanc[ed] the competing interests between" unintentionally waiving fraud claims and respecting freedom of contract. *Id.* It concluded that "parties can bargain to limit *exemplary* damages." *Id.* (emphasis added). Applying those rules to the facts, the court explained that these were "sophisticated entities represented by attorneys in an arm[']s-length transaction." *Id.* And because the parties "did not waive a claim for fraud" but only "the ability to recover punitive damages" for fraud, their limitation-of-liability clauses were enforceable. *Id.* Using case-specific language, the Texas Supreme Court concluded that "the

limitation-of-liability clauses [were] valid limited warranties that were the basis of the parties' bargain."[2] *Id.* at 233.

The parties who negotiated the Waiver here—Alta and WattStock— are sophisticated entities who were represented by counsel in an arm's-length transaction. But Alta distinguishes *Bombardier* in three ways. Alta focuses first on GE's third-party status. *Bombardier* emphasized "the bargain between the contractual parties," and GE is not a contractual party. As a result, Alta urges, the waiver here is not "clear, specific, and unequivocal" enough to justify its application in the face of a third party's fraudulent inducement. *See Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 473 (Tex. 2022). And the need for clarity is particularly important at the beginning of a business relationship. *See Italian Cowboy*, 341 S.W.3d at 335. But GE's third-party status is not a compelling distinction from *Bombardier*. What matters is the basis of the bargain, *Bombardier*, 572 S.W.3d at 232–33, and Alta bargained with WattStock to limit the liability of subcontractors, *see supra* Part II.A. It is unclear why Alta and WattStock's mutual limitation of liability should not extend to the third-party beneficiaries they bargained to protect.

Alta next illuminates the difference between the punitive-damages waiver in *Bombardier* and the consequential-damages waiver here. *Bombardier*'s holding rested in part on the fact that the provision at issue did

---

[2] We decline to read *Bombardier* for the rule that fraud *never* vitiates limitation-of-liability clauses between sophisticated represented parties. Given the emphasis on context in *Schlumberger*, *Forest Oil*, *Italian Cowboy*, and *Bombardier*, the conclusion that fraud is never a compelling reason to override sophisticated parties' freedom to contractually limit liability is oversimplified. Context matters. *See Italian Cowboy*, 341 S.W.3d at 335–36.

not "limit actual damages," only exemplary ones.[3]   572 S.W.3d at 233. Consequential damages are a measure of actual damages.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).  So, Alta argues, *Bombardier* cannot validate the allegedly fraudulently procured waiver of its consequential damages.  But here, like in *Bombardier*, direct damages are available under the Waiver—the parties did not "waive a claim for fraud" but only a measure of damages flowing from fraud.  *Bombardier*, 572 S.W.3d at 232.  Because a fraud claim could exist under the Waiver's partial limitation of liability, Alta's type-of-damages distinction is unpersuasive.  *Cf. Great Hans, LLC v. Liberty Bankers Life Ins. Co.*, No. 05-17-01144-CV, 2019 WL 1219110, at *9 (Tex. App.—Dallas Mar. 15, 2019, no pet.) (applying, in dicta, *Bombardier* to liquidated damages provision between sophisticated represented parties who negotiated at arm's-length over several months to limit damages in event of seller's intentional breach).

Alta's last effort to distinguish *Bombardier* based on the plaintiffs' respective conduct also falls short.  Alta notes that the *Bombardier* plaintiffs sought to enforce the contract against the defendant, while excising the punitive-damages limitation based on defendants' fraud.  These efforts to "have the contract and defeat it too" could not stand in *Bombardier*.  572 S.W.3d at 232 (citation modified).  But this was not the cornerstone of the Texas Supreme Court's holding.  Instead, it went on to "balanc[e] the competing interests" identified in *Italian Cowboy*.  *Id.*  That Alta is not trying to enforce the contract against GE (at this moment in time) does not, without more, take this case out of *Bombardier*'s network.

---

[3] Despite this statement, the provision at issue in *Bombardier* purported to waive both punitive and consequential damages.  572 S.W.3d at 218.  Consequential damages were not disputed in the case.

No. 25-10774

Alta and WattStock—sophisticated, represented parties negotiating at arm's-length—bargained to protect themselves and third parties against consequential-damage liability in disputes connected to the Master Agreement. We are bound by Texas law on this point. And Texas law counsels that under these circumstances, the Waiver is enforceable.[4]

## C.

In a final effort to power its claims, Alta suggests the Waiver does not apply to intentional torts. Recall that the Waiver applies to "any cause of action including negligence, strict liability, breach of contract[,] and breach of strict or implied warrant[y]." The parties wage a battle of interpretive canons in construing this language.

GE relies on the general rule that the verb "to include" ordinarily "introduces examples, not an exhaustive list." SCALIA & GARNER, *supra*, at 132 (Presumption of Nonexclusive "Include"). And the Waiver's application to "any cause of action" further confirms the nonexclusive nature of "including." Alta counters that because the Waiver uses "shall include but is not limited to" when referencing the categories of consequential damages, but "including" before identifying various causes of

---

[4] This is consistent with a recent unpublished opinion from a panel of this court. *See Polaris Eng'g, Inc. v. Tex. Int'l Terminals, Ltd.*, No. 25-40024, 2026 WL 752856 (5th Cir. Mar. 17, 2026). There, the district court rejected a lost profits claim as barred by a contract's consequential-damages waiver, despite allegations of bad-faith conduct. The plaintiff argued on appeal that the district court's ruling strayed from Texas precedent setting a "broad . . . rule that pre-injury waivers of contract liability for intentional, bad faith conduct are unenforceable." Brief of Appellee/Cross-Appellant at 72, *Polaris Eng'g*, 2026 WL 752856 (5th Cir. Mar. 17, 2026) (25-40024), Dkt. No. 89. The opposing party cited *Bombardier* to refute that notion. Amended Response and Reply Brief of Appellant/Cross-Appellee at 63–66, *Polaris Eng'g*, 2026 WL 752856 (5th Cir. Mar. 17, 2026) (25-40024), Dkt. No. 114. The court affirmed the district court's conclusion. *Polaris Eng'g*, 2026 WL 752856, at *2.

action, the latter cannot be expansive. *See Great Lakes Ins., S.E. v. Gray Grp. Invs., L.L.C.*, 76 F.4th 341, 347 (5th Cir. 2023) ("Material variation in terms suggests a variation in meaning." (citation modified)). But "shall include but is not limited to" and "including" are not materially different. *See* Scalia & Garner, *supra*, at 133 ("[T]he commonness of these belts-and-suspenders phrases does not lessen the exemplariness of *include*."). Textually, "including" is expansive.

Alta also relies on the Negative-Implication Canon, which counsels that "expressing one item of a commonly associated group" excludes unmentioned others. *City of Austin v. Powell*, 704 S.W.3d 437, 453 (Tex. 2024) (internal quotation marks and citation omitted); *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 429 (Tex. 2017); Scalia & Garner, *supra*, at 107. Alta argues that by expressing particular causes of action, the parties intended to categorically exclude intentional torts. But this interpretive canon applies only when the "context makes it fair to suppose that the [parties] considered the unnamed possibility and meant to say no to it." *Powell*, 704 S.W.3d at 453 (internal quotation marks and citation omitted); *cf. United States v. Vonn*, 535 U.S. 55, 65 (2002) (recognizing negative-implication canon is "only a guide, whose fallibility can be shown by contrary indications" in the text). That is not the case here—the words "any cause of action" and "any claim" suggest a broad intention by the parties.

Despite this broad language, Alta argues the parties intended to exclude intentional torts because Texas draws a "stark line" between waiving intentional and unintentional tort liability. To be sure, "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *Zachry Constr. Corp. v. Port of Hou. Auth. of Harris Cnty.*, 449 S.W.3d 98, 117 (Tex. 2014) (citation modified). And, generally, contractual provisions exempting a party from *all* future tort liability for

intentional or reckless harm are unenforceable. *Id.* at 116–17; *see also* Restatement (Second) of Contracts § 195 (A.L.I. 1981). From this rule, Alta argues the parties "would have explicitly stated they were waiving [consequential damages for intentional torts] if they intended to do so." But given *Bombardier*'s blessing of partial damage waivers applied to fraud claims under similarly broad language, Alta's argument that the parties intended to exclude intentional torts by implication alone is unpersuasive. *See Bombardier*, 572 S.W.3d at 233 (enforcing waiver of punitive damages incurred "for any reason" against fraud claim).

Alta appeals to a statutory interpretation case, *Waak v. Rodriguez*, 603 S.W.3d 103 (Tex. 2020), suggesting that "any cause of action" must be read in light of the "smaller subclasses" identified by the Waiver's examples. In *Waak*, the Texas Supreme Court interpreted a statutory provision that applied to "any person, including an equine activity sponsor or an equine professional." *Id.* at 108. It recognized that "including" is a "term of enlargement," but "any person" could not "be enlarged upon." *Id.* With terms incapable of expanding further, "categories following 'including' cannot be read as exclusive" nor "meaningless." *Id.* at 109. To avoid surplusage, the listed examples had "meaning only if they typif[ied] the persons intended as participants." *Id.* at 108.

Here, the Waiver expressly includes "negligence, strict liability, breach of contract[,] and breach of strict or implied warrant[y]." Despite Alta's suggestions to the contrary, a party can *intentionally* breach a contract or warranty. So, Alta's conclusion that Alta and WattStock "did not intend to waive consequential damages for the other's intentional and fraudulent conduct" does not follow. Alta fails to convincingly explain why intentional torts are not the "types of [causes of action] meant by 'any'" in light of the listed examples. *Waak*, 603 S.W.3d at 109.

No. 25-10774

The listed causes of action are "illustrative, not exclusive." *Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 595 F. App'x 306, 311 (5th Cir. 2014) (quoting *Tex. Prop. & Cas. Ins. Guar. Ass'n/Sw. Aggregates, Inc. v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 608 (Tex. App.—Austin 1998, no pet.)); *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206–07 (5th Cir. 1996) (declining to apply negative-implication canon in case where the list was "prefaced by the word 'including,' which is generally given an *expansive* reading" under Texas law).   The repeated references to "any" suggest the parties' intent to cover a broad range of causes of action, rather than restricting "any" to the examples listed.   At bottom, "a contract's plain language controls, not what one side or the other alleges they intended to say but did not." *Great Am. Ins.*, 512 S.W.3d at 893 (citation modified).   The Waiver applies to intentional torts.

\*   \*   \*

The district court correctly granted summary judgment to GE.   Alta and WattStock contracted to protect subcontractors, like GE, from consequential-damage liability for claims connected to the Master Agreement.   And GE's alleged fraud, if proven, does not render the Waiver unenforceable under the Texas Supreme Court's rationale deployed in *Bombardier*, 572 S.W.3d 213.   What's more, the consequential-damages waiver applies to "any cause of action," including intentional torts. AFFIRMED.

15